United States District Court
Southern District of Texas
**ENTERED**
November 07, 2017
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RONALD LEE CONVERSE, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-105 |
| | § | |
| CITY OF KEMAH, TEXAS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ronald Lee Converse, sued the City of Kemah Police Department and Kemah Police Officers James Melton, Ruben Kimball, Marcus Way, and Daniel Kirby, Police Dispatcher Anna Marie Whelan, and Police Chief Greg Rikard, in their individual capacities. Converse alleges that his son, Chad Silvis, committed suicide in April 2014 by hanging himself in a jail cell, using a blanket given to him by one of the officers.

Converse brings claims on his own behalf as well as his son's estate. The mother of Silvis's minor child has intervened, filing nearly identical claims as next friend of Silvis's minor child. Each of the Defendants moved to dismiss the claims against them. This Court dismissed some, but not all, of the claims. Specifically, the Court denied motions to dismiss the Fourteenth Amendment claims against Officers Way, Kimball, Melton, and Kirby, and against Dispatcher Whelan. Dkt. 51.

Some limited discovery regarding these remaining Defendants and their assertions of qualified immunity then took place, and Plaintiff and Intervenor (for ease of reference,

"Plaintiffs") have filed a Second Amended Complaint, Dkt. 75. Defendants have again moved to dismiss the remaining claims against them. Dkt. 81.

The Second Amended Complaint alleges that, at twenty minutes after midnight on April 11, 2014, a passerby told Officer Marcus Way of the City of Kemah Police Department that a person appeared to be preparing to jump off of a nearby bridge. Officer Way used his radio to report a possible "jumper," and Plaintiffs allege that the report was heard by Officer Melton, Dispatcher Whelan, and Officer Kimball. Officer Way then went to the bridge, saw Silvis sitting on the bridge railing with his feet over the edge, confirmed via his radio to Dispatcher Whelan that there was a indeed "jumper," and asked for additional officers. Officers Kimball and Melton arrived at the bride, and along with Officer War, they heard Silvis state that he was going to jump off the bridge. Silvis was eventually grabbed by officers, including Officers Kimball, Way, and Melton, and then handcuffed. Plaintiffs allege that Silvis maintained that he wanted to commit suicide throughout the entire interaction on the bridge, and that he appeared "depressed" as he was taken to the City of Kemah Jail. Plaintiffs allege that Silvis continued to speak of committing suicide throughout his interaction with Defendants, including stating, "Let's do it again tomorrow."

After Silvis's arrest, Plaintiffs allege that Officer Kimball prepared a cell in the "very small" City of Kemah Jail, and that he "gave Mr. Silvis a blanket which could be easily used by an inmate to hang or strangle themselves." Plaintiffs allege that Officer Kimball did not give Silvis a suicide smock, even though one was available, because he "decided—on his own—that Mr. Silvis was not serious and was no longer a threat to

himself." Officer Way is alleged to have instructed Officer Kimball to remove Silvis's shoes, and to have entered Silvis's cell without removing the blanket.

Plaintiffs specifically allege that Officer Kimball, Officer Way, Dispatcher Whelan and Officer Melton each visited Silvis's cell after he was locked into it and "observed the suicidal Silvis in his cell by himself with a blanket which each knew Silvis could easily kill himself with." Plaintiffs also allege that each of these Defendants knew that Silvis's cell contained a bunkbed where a suicidal person could tie off a blanket. Plaintiffs then allege that "Silvis was left in isolated in a solitary cell, with the blanket with no monitoring, either in person or through the video cameras in the cell or checks instituted. Defendants Whelan, Melton, Way, and Kimball did nothing to ensure any monitoring occurred." Plaintiffs allege that the cell door had a window to allow jail personnel to see inside the cell.

After Silvis was placed in the cell, he yelled and banged on the cell door, asked for a cigarette, asked for a nurse because his hands hurt, and said that he should have jumped. According to Plaintiffs, each of the Defendants heard Silvis "yelling and banging" and interacted with him in the "small" jail area during the relevant time period. After Silvis was placed into the cell, Officer Melton spoke to him at least twice through the window on the cell door, asking him to be quiet and "promis[ing] him a cigarette if he could be quiet for 30 minutes." However, according to Plaintiffs, Defendant Melton "ignored the blanket lying on the floor," did not provide a suicide smock, and failed to return after the promised 30 minutes. Instead, Plaintiffs allege that Officer Melton was "watching television on the internet, entirely missing the painful minutes [of Silvis's

suicide]." Then, at 1:44 am—one hour and twenty-four minutes after Officer Wray was first told there was a man on the bridge—Silvis hanged himself with the blanket from the top bunk. He is alleged to have died several minutes later. Silvis's body was discovered by jail personnel at 2:30 a.m.

Plaintiffs generally allege that "Defendants were deliberately indifferent to the serious risks associated with the mental state of Mr. Silvis and the risks/mental health issues posed to prevent this unfortunate death." More specifically, the Plaintiffs allege that these Defendants failed to provide (or even request) medical care for Silvis' injured hand or mental health issues, that they further failed to provide a suicide smock or other appropriate covering for Silvis, and that they failed to properly monitor him once he was placed into the jail cell. Plaintiffs allege that the City of Kemah had a written policy, and had trained its personnel, that suicidal detainees were not to be given blankets in their cells, were instead to be provided a "suicide smock," and they were to be monitored "frequently," but they allege that each of these Defendants ignored or violated those policies. In addition, Plaintiffs allege that the City of Kemah's Jail policies require any medical requests from detainees "to be taken to the shift supervisor [here, Officer Melton]" and the policies forbid any employee from ignoring or diagnosing a medical complaint from a detainee. Plaintiffs allege that the Defendants were trained on these policies by the City of Kemah, as well as courses administered by the Texas Commission on Law Enforcement, but that these Defendants failed to adhere to these standards and policies. Plaintiffs also allege that "Defendants Whelan, Way, Melton and Kimball were aware of several media reports of inmates dying of suicides using bedding in jails," and

they were aware "jail suicide was the leading cause of death in Texas jails and that bedding hanging was the most frequent method of suicide."

## APPLICABLE LAW

The Court's previous Memorandum Opinion and Order set out the applicable standards for motions to dismiss under Rule 12(b)(6), as well as the law governing claims under 42 U.S.C. § 1983 and the defense of qualified immunity. All of those standards are incorporated into the following analysis.

## ANALYSIS

The Court has previously dismissed all of the claims under the Eighth Amendment, the Fourteenth Amendment claims against the City of Kemah and Police Chief Rikard, and all of the claims under the Texas Tort Claims Act. Accordingly, the Court now turns to the remaining Defendants' contention that the Second Amended Complaint fails to state a claim under § 1983 for the deprivation of Silvis's Fourteenth Amendment rights against Officers Way, Kimball, Melton, and Kirby, and Dispatcher Whelan.

The Court examines the claims against the individual officers through the lens of Rule 12(b)(6), looking at the allegations in the Second Amended Complaint to determine whether it alleges specific facts that, if true, would be sufficient to: (1) demonstrate liability, *i.e.,* that each individual defendant had "subjective knowledge of a substantial risk of serious harm to [Silvis] but responded with deliberate indifference," and (2) to overcome qualified immunity, *i.e.,* that each individual defendant's actions were

objectively unreasonable in light of the clearly established law at the time those actions were taken.

Sadly, this is not the only case on the Court's docket arising from an alleged lack of medical care for a pretrial detainee, nor is it the only case involving the suicide or death of a pretrial detainee. Other courts in the Southern District of Texas and the Fifth Circuit have heard similar lawsuits. *See, e.g., Hyatt v. Thomas*, 843 F.3d 172, 180 (5th Cir. 2016) ("It is clear that more can and must be done to address suicides in prisons and jails."). Each is an individual and collective tragedy. But there is no doubt that the law with respect to qualified immunity is a substantial hurdle for plaintiffs to overcome, even at the 12(b)(6) stage. *See, e.g., McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) ("When the motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm ... alleged and that defeat a qualified immunity defense with equal specificity.'") (citing *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014) and *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). After reviewing the allegations in the Second Amended Complaint, and even accepting as true all of its properly pled, specific, factual allegations and making all reasonable inferences in favor of the non-movants, the Court concludes that the remaining claims asserted against the remaining Defendants should be **DISMISSED**.

Reviewing the individual allegations against Officer Kirby, the Court notes that the Second Amended Complaint does not include him in the specifically-pled events that led to Silvis's suicide. Accordingly, the Court finds that the Second Amended Complaint

does not contain any specific factual allegations that would either 1) demonstrate liability as to Officer Kirby or 2) would overcome Officer Kirby's assertion of qualified immunity. Accordingly, the remaining claims against Officer Kirby are **DISMISSED**.

As to the particular allegations against each of the remaining Defendants—Officer Way, Officer Kimball, Officer Melton, and Dispatcher Whelan—the Court finds that those allegations, as set forth in detail above, do not overcome thier assertions of qualified immunity. Specifically, in light of cases such as *Hyatt v. Thomas*, 843 F.3d 172, 177–78 (5th Cir. 2016) (internal citations omitted), the Court finds that the allegations against these individual Defendants are not sufficient to allow the Court to draw the reasonable inference that each of these individual Defendants acted with "deliberate indifference" or that their actions were objectively unreasonable in light of the clearly established law at the time those actions were taken. In particular, the Court notes the rapid sequence of events, as well as the Plaintiff's own assertions that Officer Kimball gave Silvis the blanket because he concluded that Silvis was "not serious" about committing suicide. Similarly, although Plaintiffs complain that Officer Way and Officer Melton each had an opportunity to remove the blanket from Silvis' cell but failed to do so, this failure is not "objectively unreasonably in light of the clearly established law at the time." Officer Way instructed that Silvis' shoelaces were to be taken from him, and Officer Melton interacted with Silvis during the short time he was in the jail, trying to keep him calm. Although Plaintiffs allege that Silvis was not monitored closely enough, they do not explain what timetable should have been used, and which checks were missed during the short time Silvis was in the Jail. Finally, there are little, if any, specific

allegations about Dispatcher Whelan and her duties or actions that night, other than a conclusory allegation that she too had an opportunity to prevent the suicide but failed to act. Accordingly, the Court finds that the claims against these Defendants should also be **DISMISSED**.

## CONCLUSION

All of the Plaintiff's and Intervenor's claims against the remaining individual Defendants are hereby **DISMISSED** on the grounds that Plaintiffs have failed to allege specific facts that would overcome the assertions of qualified immunity in this case.

**ANY REMAINING PENDING MOTIONS ARE DENIED AS MOOT.**

SIGNED at Galveston, Texas, this 7th day of November, 2017.

George C. Hanks Jr.
United States District Judge